IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| DONALD GRIFFIN, | Cause No. CV 14-07-BU-DWM-JCL |
|---|---|
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on Petitioner Donald Griffin's application for writ of habeas corpus under 28 U.S.C. § 2254. Griffin is a state prisoner proceeding pro se.

**I. Background**

Griffin challenges the manner in which duly-imposed sentences are being executed. While the problem Griffin describes is rooted in two sentences imposed in 2003, it also involves a third sentence imposed in 2013, which required recalculation of the sentences imposed in 2003.

On September 4, 2003, based on a felony conviction for driving under the influence ("DUI"), Griffin was sentenced in Cause No. DC 02-121 to be "committed to the custody of the Montana Department of Corrections for a period

1

of thirteen (13) months, for placement in an appropriate residential alcohol treatment program operated or approved by the Department." The judgment continued, "Should the Defendant successfully complete such treatment program, the remainder of the 13-month custodial sentence shall be suspended."[1] The sentence included a two-year suspended term, also in the custody of the Department of Corrections, to "commence upon the expiration of the 13-month term." Judgment at 2, *State v. Griffin*, No. DC 02-121 (Mont. 2d Jud. Dist. Sept. 4, 2003) (Doc. 1-1 at 10); *see also* Mont. Code Ann. § 61-8-731(1)(a) (2001).

On the same day, in Cause No. DC 03-39, Griffin was sentenced to serve 15 years in prison, with 5 suspended, for operating a clandestine laboratory. Judgment at 2, *State v. Griffin*, No. DC 03-39 (Mont. 2d Jud. Dist. Sept. 4, 2003) (Doc. 1-1 at 15). He received credit for 101 days' time served against this sentence, *see id.* at 4 (Doc. 1-1 at 17), which would put its commencement date at May 26, 2003.

The sentences in DC 02-121 and DC 03-39 were imposed to run consecutively to each other, but neither judgment said which should be executed first. Judgment DC 02-121 at 4 (Doc. 1-1 at 12); Judgment DC 03-39 at 4 (Doc. 1-

---

[1] The governing statute provides that the remainder of the term must be served on probation. *See* Mont. Code Ann. § 61-8-731(1)(a) (2001). Because probationers and persons serving suspended terms alike are supervised under the auspices of the Department of Corrections in the community under conditions of release, the Court does not believe there is a meaningful difference between the terms of the judgment and the terms of the statute. If there is a difference, Griffin might still be able to bring the matter to the attention of the Montana Supreme Court, as explained below.

1 at 17).

The Department of Corrections calculated Griffin's sentence by running the DC 03-39 sentence first and the DC 02-121 sentence consecutive to it. Griffin's counsel was told that Griffin would be eligible for parole on September 13, 2006. Letter at 2 (Doc. 1-1 at 19). Griffin was released on parole on the DC 03-39 sentence on September 21, 2006.

In 2012, Griffin was charged with a second felony DUI offense (his fifth DUI). He was sentenced on October 3, 2013. He was again committed to the custody of the Department of Corrections "for placement in an appropriate residential alcohol treatment program" for a period of 13 months, with any time remaining in the 13-month period to be suspended if and when he successfully completed the treatment program.[2] He was also sentenced to a consecutive prison term of five years, with all time suspended. The new sentence was imposed to run consecutively to the sentence in DC 03-39. Judgment DC 12-15 at 2 (Doc. 1-1 at 21); *see also* Mont. Code Ann. §§ 46-18-401(1), 46-23-217. It appears Griffin successfully completed a residential treatment program on this occasion, *see* Letter (Doc. 1-1 at 31); Certificates (Doc. 1-1 at 29-30). What is not clear is whether

---

[2] The Judgment appears to conflict with the statute. Because the 2012 DUI conviction was Griffin's second felony DUI conviction – that is, he had "four or more *prior* convictions" for DUI – it appears the controlling statute did not authorize probation on successful completion of a residential alcohol treatment program. *See* Mont. Code Ann. § 61-8-731(3) (2011).

Griffin completed a treatment program in relation to DC 02-121 before he was paroled in September 2006. *See* Exhibit (Doc. 1-1 at 27) (box showing, as of April 20, 2006, "Court ordered ITU or WATCh - complete can possible ss one sentence & make parole"); Resp. to Order (Doc. 11 at 3) (showing a chemical dependency program completed "7/06").

While this action has been pending, Griffin has been transferred on various occasions among prisons and pre-release centers, *see* Notices of Change of Address (Docs. 6-9, 13-14), consistent with his commitment to the discretionary custody of the Department of Corrections.

At one point, when Griffin returned to Montana State Prison in 2013, the Department of Corrections calculated the terms of the sentences he has yet to serve by running the sentence in DC 02-121 first, followed by DC 03-39 and then DC 12-15. *See* Sentence Calculation 2 (Doc. 4-1 at 1).

## II. Griffin's Claims

Based on the calculations made before he was paroled in September 2006, *see* Sentence Calculation 1 (Doc. 4-2 at 1), Griffin argues that the DOC "flip-flopped" his custodial terms in DC 02-121 and DC 03-39 "in order to hold Mr. Griffin at a more restrictive level of custody," Pet. Br. (Doc. 1-1) at 1, when he was returned to Montana State Prison in 2012-2013. Griffin claims that the 13-month treatment portion of a DUI sentence must run after another, consecutive

4

sentence, because the Legislature intended persons who successfully complete treatment to earn "a reduced jail commitment." *Id.* He also contends that the "flip-flop" violated his right to due process.

Griffin further alleges that it is unlawful for the Department of Corrections to "start" and "stop" individual sentences, or at least the sentence imposed in DC 02-121, because the Judgment in that case provided that the two-year suspended term must "commence upon the expiration of the 13-month term."

In conclusion, Griffin asserts the Department is "trying to make me do MSP [prison] sentence for entire 11 years and 1 month by flipping sentences." Sentence Calculation 2 (Doc. 1-1 at 26).

### III. Analysis

#### A. Federal Legal Basis for the Claim

As is frequently the case with claims involving sentence calculations, both state and federal, the Court has spent a remarkable amount of time attempting to understand Griffin's allegations, the underlying law, and what actually happened in the case.

No federal due process claim arises from the fact that sentences are "started" and "stopped" or in the fact that terms may be "flip-flopped" or calculated in a different manner at different times. These are practical necessities in both state and federal courts. Sentence calculations are surprisingly complex and difficult, and

mere mistakes do not violate the United States Constitution.

But a federal due process claim can arise if the Department of Corrections fails to honor the express terms of a Montana prisoner's judgment and of the underlying statute. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Here, Griffin's claim involves a provision of Montana law which requires that an offender who successfully completes a residential alcohol treatment program designated by the Department in less than 13 months is entitled to serve any remaining portion of those 13 months on "probation." Mont. Code Ann. § 61-8-731(1)(a); *see also* Judgment DC 02-121 at 2 (Doc. 1-1 at 10) (requiring that remaining portion of 13-month term be "suspended" on successful completion of the program). So far as the Court is aware, both the term "probation" and the term "suspension" necessarily mean an offender is released on conditions set by the sentencing court and subject to supervision in the community, *not* held in prison or placed in a less-restrictive but still-custodial location designated by the Department. *Compare, e.g.*, Mont. Code Ann. § 46-1-202(21) *with id.* § 46-18-201(2), (3)(a)(iii), (3)(a)(iv)(A), (4).

On review of all the materials before the Court, it appears Griffin may have identified a mistaken assumption in the Department's calculation of his sentences. Before filing his habeas petition in this Court, Griffin filed a habeas petition in the Montana Supreme Court challenging the calculation. *See* Pet., *Griffin v.*

*Kirkegard*, No. OP 13-0784 (Mont. filed Nov. 25, 2013). In response to the petition, the State's counsel argued that "Griffin was not eligible for parole during the 13 month *custodial* term in DC 02-121" and "was required by law to serve the 13 month term before he could become eligible for parole." Resp. Br. at 5-6, *Griffin v. Kirkegard*, No. OP 13-0784 (Mont. Jan. 6, 2014), *available at* http://supremecourtdocket.mt.gov (accessed Jan. 21, 2015) (emphasis added). The Montana Supreme Court followed the State's description of Griffin's sentence. Order at 1, *Griffin*, No. OP 13-0784 (Mont. Feb. 4, 2014) (describing "net effect" of sentences in DC 02-121 and DC 03-39 as "eleven years and one month *of incarceration*, with credit for time served, followed by seven years of probation") (emphasis added).

The State was correct that Griffin could not be *paroled* on the 13-month term in DC 02-121. *See* Mont. Code Ann. § 61-8-731(1)(a). But it does not follow that Griffin had to be *detained in prison* until he completed the entire 13-month term. The 13-month term was not a prison term. Nor was it a typical commitment to the custody of the Department of Corrections under Mont. Code Ann. § 46-18-201(3)(a)(iv)(A). It was a commitment to the custody of the Department – which certainly had the discretion *initially* to place Griffin in prison, *see, e.g.*, Mont. Code Ann. §§ 46-18-201(3)(a)(iv)(A), 61-8-731(2) – but if and when Griffin successfully completed the residential alcohol treatment program designated for

7

him by the Department, the remainder of the 13-month term had to be suspended or served on probation, *see* Judgment DC 02-121 at 2 (Doc. 1-1 at 10); Mont. Code Ann. § 61-8-731(1)(a) (remainder of term "must be served on probation"), just as the two-year consecutive term under Mont. Code Ann. § 61-8-731(1)(b) was suspended, *see* Judgment DC 02-121 at 2-3 (Doc. 1-1 at 10-11). To put it another way, even though he clearly was not eligible for parole on the 13-month term, Griffin *was* eligible for release before expiration of that term, provided he successfully completed the alcohol treatment program designated by the Department. But it was not clear in the proceedings before the Montana Supreme Court (nor is it clear in this Court) whether Griffin successfully completed a residential alcohol treatment program before he was paroled in September 2006.

If Griffin did *not* successfully complete the designated treatment program before he was paroled in September 2006, then – just as the State argued in the Montana Supreme Court – it does not matter which sentence was placed first in the calculation of Griffin's time in prison and on release. Thirteen months in the Department's custody is 13 months in its custody, whether those months are calculated first or last. But if Griffin was entitled to suspension of (or probation on) some portion of the 13-month term in DC 02-121 before he was actually released on parole in September 2006, then the calculation of his prison term in DC 03-39 might be different now. In other words, the possible flaw in the State's

8

argument in the Montana Supreme Court resonates with Griffin's allegation that it *can* matter whether the 13-month term in DC 02-121 is determined to run before the prison term in DC 03-39. While the total amount of time Griffin must serve *somewhere* would be the same regardless of how the sentences are calculated, if he successfully completed treatment as to some portion of the 13-month term in DC 02-121, it appears he could not serve *any* time on DC 02-121 *in prison* or other detention – unless the sentencing court revoked some or all of the suspended or probationary portion of his sentence, or unless such detention was authorized as a condition of the suspended or probationary portion of the sentence. *See generally* Mont. Code Ann. § 46-18-203; Judgment at 3-4 (Doc. 1-1 at 11-12).

Consequently, the Court cannot say with certainty that Griffin cannot state a federal due process claim for relief. He might, given the clear terms of Mont. Code Ann. § 61-8-731(1)(a).

### B. Is the Petition Properly Before This Court?

Although Griffin might have a valid claim, his habeas petition to the Montana Supreme Court did not present the only fact that could support a federal due process claim for relief: specifically, the fact that he successfully completed the required alcohol treatment program before expiration of his 13-month term in DC 02-121. Nor did Griffin rely on federal law. These defects are important, because 28 U.S.C. § 2254 provides "a simple and clear instruction to potential

litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520 (1981). In order to properly present a federal claim in state court, a litigant must indicate he relies on a federal right, and he must also present "the operative facts" supporting his claim. *Davis v. Silva*, 511 F.3d 1005, 1010-11 (9th Cir. 2008).

When Griffin filed his habeas petition in the Montana Supreme Court, he contended that any sentence imposed under "MCA 61-8-731" must be executed after any other sentence because "it is beyond comprehension that the legislature would intend to send someone to residential alcohol treatment, then parole[3] him for the remaining 7 months only to reincarcerate him upon the sentence expiration." Pet. at 4, *Griffin*, No. OP 13-0784. He also contended that time he spent in custody before he was sentenced in DC 12-15 should have been credited against that sentence, rather than attributed to violation of his parole in DC 03-39. Griffin claimed the Department could not manipulate sentence calculations "in any manner that deprives the accused of his liberty for longer than any authority granted in any statute," Pet. at 5, and he claimed the Department was attempting "to make it seem that he was still being held legally," *id.* But he did not assert the Department's calculation was designed "to hold Mr. Griffin at a more restrictive

---

[3] Use of this word was an error. There is no parole under Mont. Code Ann. § 61-8-731(1)(a). But probation, provided the statutory condition is met, is required.

10

level of custody," as he said in his federal petition. Pet. Supp. (Doc. 1-1 at 1). Nor did he say, as he did in this Court, that the Department was "trying to make me do MSP sentence for entire 11 years and 1 month by flipping sentences." Sentence Calculation 2 (Doc. 1-1 at 26). As the Court understands it, these phrases express the real gravamen of his claim. Moreover, Griffin did not allege, either in this Court or in his habeas petition in the Montana Supreme Court, that he successfully completed a residential alcohol treatment program *before* he was released on parole in September 2006. He merely attached to his federal petition documents that suggest he might have.

An unexhausted claim may be deemed exhausted if no state remedies remain available to the prisoner. Here, however, the Court cannot say that a second habeas petition would necessarily be dismissed by the Montana Supreme Court. In at least one respect, the Department's sentence calculation of 2013, *see* Pet. Supp. (Doc. 1-1 at 26), is inconsistent with the express terms of one of the controlling judgments: in setting Griffin's sentence in DC 02-121 to begin on May 26, 2003, the calculation ignores the judgment's provision of credit for time served in DC 03-39, not DC 02-121. *Cf. State v. Lott*, 150 P.3d 337, 342 ¶ 22 (Mont. 2006).

When the federal court cannot be sure that a return to state court would be futile, it may not deem a claim exhausted. If the prisoner *might* be permitted to

return to state court, he *must* do so. *Franklin v. Johnson*, 929 F.2d 460, 463-64 (9th Cir. 1991). That is what Griffin should do here.

Of course, if Griffin knows he did *not* successfully complete the residential alcohol treatment program designated by the Department of Corrections before he was released on parole on DC 03-39 in September 2006, then he is not entitled to relief in this Court or in state court. But, to the extent Griffin might have a valid federal claim, he must first present his claim to the Montana Supreme Court. Unless and until it is clear that he may not proceed there, he may not proceed in this Court. His petition will be dismissed without prejudice to re-filing at a later time. Because the Court is not reaching the merits of any claim, a second petition will not be subject to dismissal as a "second or successive" petition. *Slack v. McDaniel*, 529 U.S. 473, 489 (2000); *see also* Fed. R. Civ. P. 60(b)(6); *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

A certificate of appealability is not warranted. Griffin must return to state court. If he still believes he is entitled to relief in this Court after he attempts further proceedings in state court, he may return.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. The Petition (Doc. 1) should be DISMISSED without prejudice.

2. The Clerk of Court should be directed to enter by separate document a judgment of dismissal.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Griffin may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Griffin must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 28th day of January, 2015.

Jeremiah C. Lynch
United States Magistrate Judge

---

[4] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

13